UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Brent C. Anderson and Shawnine Shawnine[1],

                Plaintiffs,

                v.

Wells Fargo Home Mortgage, Rivertown
Development Group LLC, and Schiller & Adam, P.A.,

                Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 14-5013 ADM/JSM

_____

James R. Mayer, Esq., Mayer Brayer LLP, Minneapolis, MN, on behalf of Plaintiffs.

Ashley M. DeMinck, Esq. and Ellen B. Silverman, Esq., Hinshaw & Culbertson LLP,
Minneapolis, MN, on behalf of Defendant Wells Fargo Home Mortgage.

Sean O. Skrypek, Esq., Kueppers Kronschnabel & Daly, P.A., St. Paul, MN, on behalf of
Defendant Rivertown Development Group LLC.

Samuel R. Coleman, Esq., Schiller & Adam, P.A., St. Paul, MN, on behalf of Defendant Schiller
& Adam, P.A.

_____

## I.  INTRODUCTION

This matter is before the undersigned United States District Judge for a ruling on

Defendant Wells Fargo Home Mortgage's ("Wells Fargo") Motion to Dismiss [Docket No. 51].

Plaintiffs Brent C. Anderson and Shawnine Shawnine ("Plaintiffs") oppose the Motion.  For the

reasons herein, the Motion is granted.

## II.  BACKGROUND

### A.  Procedural History

Plaintiffs initiated this action on November 24, 2014 in Minnesota state court against

---

[1] The caption in this case conforms with the Plaintiffs' names as listed in the Amended
Complaint.

Wells Fargo Home Mortgage ("Wells Fargo"), Rivertown Development Group LLC

("Rivertown"), Schiller & Adam, P.A. (Counsel for Wells Fargo), and Sean Skrypek (counsel for

Rivertown).  Compl. [Docket No. 1-1].  In their *pro se* Complaint, Plaintiffs asserted claims

against Schiller & Adam, P.A. for fraudulently foreclosing on their property and against Wells

Fargo for violations of the Fair Debt Collection Practices Act, the Fair Credit Reporting Act, and

for negligent misrepresentation related to the foreclosure.  Compl. ¶¶ 1–9.  Although named in

the Complaint, no factual allegations or claims were asserted against Rivertown (the purchaser of

Plaintiffs' home at a sheriff's sale) or Skrypek.  See id.  On December 18, 2014, Wells Fargo

removed the action to Federal District Court on the basis of federal question jurisdiction.  Notice

of Removal [Docket No. 1]; 28 U.S.C. § 1331.

A detailed recitation of this action's procedural history in federal court can be found in

this Court's previous Order [Docket No. 48].  In that Order, the Court granted Plaintiffs' Motion

to Amend [Docket No. 38] and denied Wells Fargo, Rivertown and Schiller & Adam, P.A.'s

dispositive motions [Docket Nos. 7 and 16] as moot.  Wells Fargo now brings a Motion to

Dismiss based on the Amended Complaint [Docket No. 49].

**B.  Factual Allegations**

Plaintiffs Anderson and Shawnine are married and live in a home on Rome Avenue in St.

Paul, Minnesota.  Amended Compl. ¶ 3.  In 2003, Anderson paid off the existing mortgage on

the property with a new loan from Wells Fargo for $175,000.  Id. ¶ 8.  At the direction of a Wells

Fargo representative, Shawnine was added to the mortgage document.  Id. ¶ 9.  Although

Shawnine's legal name consists of a single name—"Shawnine," she was added to the mortgage

document as "Shawnine Shawnine."  Id.  Shawnine signed her name to the document with the

singular "Shawnine."  Id.  The mortgage granted Wells Fargo the power of sale in the event of a default.  Id. ¶ 11.

In 2012, the family experienced financial difficulty and began to "struggle" with their mortgage payments.  Id. ¶14.  In March 2013, Schiller & Adam, P.A., counsel for Wells Fargo, provided Plaintiffs with a reinstatement amount after their discussion of the delinquency of the loan.  Id. ¶15.  On April 11, 2013, a Wells Fargo representative notified Plaintiffs that additional documentation was needed to determine Plaintiffs' eligibility for mortgage assistance.  Id. ¶ 17.  Plaintiffs timely provided the documentation and offered to fax Wells Fargo any further information upon request.  Id. ¶ 18.  Wells Fargo did not respond and proceeded with foreclosure.  Id.

Plaintiffs subsequently requested and obtained a postponement of the foreclosure sale.  Id. ¶ 20.  On February 18, 2014, Schiller & Adam, P.A. again notified Plaintiffs that the mortgage had been referred for foreclosure.  Id. ¶ 21.  Shortly thereafter on February 20, 2014, Wells Fargo representative Jane Middents contacted Plaintiffs to discuss potential loan modification options.  Id. ¶ 22.  In April 2014, Middents explained that Plaintiffs qualified for a loan modification with an interest rate on the loan which would not increase.  Id. ¶ 23.  On April 30, 2014, Plaintiffs wrote to Wells Fargo, seeking clarifications regarding the amount owed and requesting that Wells Fargo "Please extend option for modification repayment plan for modification purposes."  Id. ¶ 24.  On May 1, 2014, Plaintiffs wrote Wells Fargo to clarify whether the property had been sold.  Id.

On May 8, 2014, Wells Fargo mailed Plaintiffs with a Temporary Forbearance Agreement (the "Agreement").  Id. ¶ 25.  The Agreement required Plaintiffs to make three

payments to avoid acceleration of the loan.  Id.  However, the Agreement set forth terms that

were impossible for Plaintiffs to satisfy—the first payment was due on April 1, 2014 (thirty-

eight days prior to Plaintiffs receiving the Agreement) and the second payment was due on May

1, 2014 (seven days prior to Plaintiffs receiving the Agreement).  Id.

    Plaintiffs also received a letter from Wells Fargo dated May 1, 2014, that confirmed

receipt of their previous communications and stated that Wells Fargo needed additional time to

conduct further research.  Id. ¶ 27.  On May 14, 2014, Plaintiffs received a follow up letter from

Wells Fargo that read "[t]he research and resolution of your inquiry is going to take longer than

originally stated."  Id. ¶ 28.  Despite Wells Fargo's May 14 correspondence, Schiller & Adam,

P.A. wrote Plaintiffs on May 15, 2014, reporting that the mortgage was referred to their office

for foreclosure proceedings.  Id. ¶ 29.  On May 23, 2014, Wells Fargo responded to Plaintiffs'

previous inquiries and confirmed that the mortgage had been approved for a trial payment plan

on April 14, 2014, but "[o]n May 9, 2014, the loan was removed from the trial payment plan do

[sic] to nonpayment.  As of the date of this letter, the loan is in active foreclosure with a

scheduled sale date of July 8, 2014, and must be vacated by August 12, 2014, unless the loan is

reinstated."  Id. ¶ 30.

    Schiller & Adam, P.A. initiated a non-judicial foreclosure on the property and it was sold

to Rivertown at a sheriff's sale on July 8, 2014.  Id. ¶¶ 33–34.  The power of attorney authorizing

the firm to proceed with the foreclosure sale and the Notice of Sale identified Shawnine as

"Shawnine Shawnine."  Id. ¶¶ 33–34.

## C.  The Amended Complaint

    The Amended Complaint asserts four counts solely against Wells Fargo:  Count

I—breach of contract; Count II—breach of the duty of good faith and fair dealing; Count

III—negligent misrepresentation; and Count IV—violation of the Real Estate Settlement

Procedures Act ("RESPA").  Id. ¶¶ 36–63.  The Amended Complaint additionally brings two

counts against both Wells Fargo and Rivertown: Count V—quiet title and Count

VI—declaratory judgment.  Id. ¶¶ 64–80.  Wells Fargo now moves to dismiss the Complaint in

its entirety.[2]

### III.  DISCUSSION

**A.  Standard of Review**

Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to

dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P.

12(b)(6).  In considering a motion to dismiss under Rule 12(b)(6), the pleadings are construed in

the light most favorable to the nonmoving party, and the facts alleged in the complaint must be

taken as true.  Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994); Ossman v. Diana Corp., 825

F. Supp. 870, 879–80 (D. Minn. 1993).  Any ambiguities concerning the sufficiency of the

claims must be resolved in favor of the nonmoving party.  Ossman, 825 F. Supp. at 880.

A pleading must contain "enough facts to state a claim to relief that is plausible on its

face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility

---

[2] As noted above, Rivertown previously opposed Plaintiffs' Motion to Amend, arguing
that the claims in the Amended Complaint asserted against Rivertown were futile.  This Court
granted Plaintiffs' Motion to Amend, finding that a futility determination on the claims asserted
against Rivertown would require premature dispositive findings on counts asserted solely against
Wells Fargo when Wells Fargo had not opposed the Motion to Amend.  To minimize
unnecessary burden on Rivertown, the Order granting the Motion to Amend stated that "the
Court will construe Rivertown's opposition to Plaintiffs' Motion to Amend as a motion to join in
Wells Fargo's future dispositive motion." Order at 14.  Accordingly, this Order will also address
the counts directed at Rivertown.

when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but not 'shown'—'that the pleader is entitled to relief.'" Id. (quoting Fed. R. Civ. P. 8(a)(2)).

## B. Breach of Contract

In Count I of the Amended Complaint, Plaintiffs allege that Wells Fargo breached the mortgage contract provision that "This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law." Am. Compl. ¶ 38; Wells Fargo's Appx. [Docket No. 54] Ex. 1 ¶ 16.[3] Plaintiffs allege that Wells Fargo breached this provision when exercising its rights upon default by violating the RESPA and the Minnesota Homeowner's Bill of Rights, Minn. Stat. § 582.043.

Under RESPA, a lender must maintain procedures to evaluate loss mitigation applications and to provide information on loss mitigation options to mortgagees. See 12 C.F.R. § 1024.38. RESPA further requires that a lender exercise reasonable due diligence in obtaining the information needed for a loss mitigation application. See 12 C.F.R. § 1024.41. Similarly,

_____

[3] The Mortgage document, although not originally attached to the Amended Complaint, may properly be considered on deciding this Motion to Dismiss as it is embraced by the pleadings and a matter of public record. See Missouri ex rel. Nixon v. Coeur D'Alene Tribe, 164 F.3d 1102, 1107 (8th Cir. 1999).

the Minnesota Homeowner's Bill of Rights mandates that a lender must notify a borrower in

writing of available loss mitigation options, timely offer the borrower loss mitigation options for

which they are eligible, and to evaluate the borrower for loss mitigation options prior to

foreclosing on the mortgage.  Minn. Stat. § 582.043.  Specifically, Plaintiffs allege that Wells

Fargo failed to provide any loss mitigation opportunity prior to foreclosure, and, thus breached

the mortgage by failing to adhere to the "applicable law" of RESPA and the Minnesota

Homeowner's Bill of Rights.

The Court finds that Plaintiffs' breach of contract claim fails.  Plaintiffs cannot simply

recast statutory claims as breach of contract causes of actions based on the mortgage's general

governing law provision.

Although the Eighth Circuit has not explicitly addressed this argument, other courts have

soundly rejected it.  In Page v. J.P. Morgan Chase, the Fifth Circuit considered the same

argument Plaintiffs advanced here, premised on nearly identical language in a deed of trust that

"all rights and obligations contained in this Security Instrument are subject to any requirements

and limitations of Applicable Law."  605 Fed. Appx. 272, 275 (5th Cir. 2015).  The plaintiff

argued that by inserting this language in the deed, any violation of state or federal law

necessarily constituted a breach of contract.  Id.  The Fifth Circuit rejected this argument,

holding "it is clear that paragraph 16 identifies the law that governs the parties' agreement but

does not provide that violation of any such law is a breach of contract."  Id.  Other courts have

made similar rulings.  See e.g., Uzodinma v. J.P. Morgan Chase, No. 13-5010, 2014 WL

4055367, at *3 (N.D. Tex. Aug. 14, 2014) (evaluating a similar "Applicable Law" provision,

holding "[t]his language does not imply that if a party to the contract violates a state or federal

law it also breaches the contract . . . .  This argument yields an absurd result, as any violation of

any state or federal law would automatically be a breach of contract, and is not reflected in the

language of the deed of trust"); Townsend v. Fed. Nat'l Mortg. Ass'n, 923 F. Supp. 2d 828, 841

(W.D. Va. 2013) (evaluating identical provision and holding that such language did not

incorporate the FDCPA under traditional principles of contract law because a contract must be

construed without adding terms that were not included by the parties).

       The reasoning of these cases is instructive.  Under Minnesota law, "[w]here there is a

written instrument, the intent of the parties is determined from the plain language of the

instrument itself."  Travertine Corp. v. Lexington-Silverwood, 683 N.W.2d 267, 271 (Minn.

2004).  A court is required to award unambiguous contract language its plain meaning.  Savela v.

City of Duluth, 806 N.W.2d 793, 796–97 (Minn. 2011) (citing Metro. Airports Comm'n v.

Noble, 763 N.W.2d 639, 645 (Minn. 2009)).

       There is no indication here that the parties by inserting a boilerplate applicable law

provision intended to import the Homeowner's Bill of Rights or RESPA into the mortgage

contract.  The ordinary meaning of the paragraph's language unambiguously governs disputes

pertaining to the mortgage, it does not serve to incorporate the Homeowner's Bill of Rights and

RESPA when neither statute is referenced in the provision.  See Girgis v. Countrywide Home

Loans, Inc., 2010 WL 4365884, at *7 (N.D. Ohio Oct. 28, 2010) (interpreting the same language

at issue here and holding that "the choice of law provision is meant to dictate the law that will

govern disputes related to the mortgage—it is not meant to incorporate the law at large").

Finally, accepting Plaintiffs' argument here would manifest the "absurd result" other courts have

recognized, in that any violation of state or federal law would be considered a breach of contract

when this intent is not reflected in the mortgage language itself.  See Uzodinma, 2014 WL

4055367, at *4.

Plaintiffs cite to a series of cases where plaintiffs asserted breach of contract claims for

violations of HUD regulations.  See e.g. Bates v. JP Morgan Chase Bank, NA, 768 F.3d 1126

(11th Cir. 2014) ("HUD regulations clearly referenced in a deed as conditions precedent to the

power to accelerate and the power of sale could form the basis of a breach of contract claim.");

Sinclair v. Donovan, Nos. 11:11-10; 1:11-79, 2011 WL 5326093, *7 (S.D. Ohio Nov. 4, 2011).

These cases are clearly distinguishable.  The mortgages at issue explicitly incorporated the HUD

regulations as conditions precedent to the lender's performance under the mortgage.  No such

language pertaining to either the Minnesota Homeowner's Bill of Rights or RESPA is found in

the Agreement. The Agreement here only references "Applicable Law" which is defined as "all

controlling applicable federal, state, and local statutes, regulations, ordinances, and

administrative rules and orders (that have the effect of law) as well as all applicable final, non-

appealable judicial opinions."  This broad definition does not equate to an explicit reference in a

mortgage to a specific statute or regulation.

## C.  Breach of Good Faith and Fair Dealing

Count II of the Amended Complaint asserts a claim for breach of good faith and fair

dealing.  Plaintiffs allege that Wells Fargo breached this duty when it mailed Plaintiffs a

Temporary Forbearance Agreement with terms which required performance by dates which had

already passed and thus were impossible.  According to Plaintiffs, because they did not comply

with the terms of this Agreement, they were unable to participate in loss mitigation options and,

as a result, experienced wrongful foreclosure.

Under Minnesota law, the duty of good faith and fair dealing is read into every contract. In re Hennepin Cty. 1986 Recycling Bond Litig., 540 N.W.2d 494, 504 (Minn. 1995). This duty prevents a party to the contract from unjustifiably hindering another party's performance of the contract. Id. If no contract exists between the parties, a claim for breach of the covenant of good faith and fair dealing necessarily fails. Crosstown Holding Co. v. Marquette Bank, N.A., A04-1693, 2005 WL 1154271, at *4-5 (Minn. Ct. App. 2005).

Wells Fargo argues that the Temporary Forbearance Agreement constituted an offer to consider modification—not an enforceable contract. Additionally, Wells Fargo contends that the Minnesota's credit agreement statute, Minn. Stat. § 513.33, subd. 2, requires a credit agreement to be signed by the parties to be enforceable. Since the Agreement was unsigned, no enforceable contract existed which Wells Fargo argues is fatal to the breach of duty of good faith and fair dealing claim. Plaintiffs respond that the Agreement is an enforceable contract even though it is unsigned. Furthermore, Plaintiffs argue that Wells Fargo's statute of frauds argument pursuant to § 513.33, subd. 2 is an affirmative defense that cannot properly be addressed in resolving a motion to dismiss.

The Court finds that the Temporary Forbearance Agreement mailed to Plaintiffs here did not create an enforceable contract. Plaintiffs maintain that "an agreement comes into existence when an offer has already been extended and accepted" and the Agreement here was the final result of multiple communications between Plaintiffs and Wells Fargo. Mem. Opp'n Mot. Dismiss [Docket No. 58] 19. Simply because Wells Fargo termed the payment plan as an "Agreement," does not make it a contract under Minnesota law. No allegations in the Amended Complaint allow this Court to reasonably infer that the Agreement was a contract. The terms of

the Agreement required Plaintiffs to make payments in order to eventually be considered for a

permanent loan modification; the agreement itself did not contain terms for permanent loan

modification.  See e.g., Bohnhoff v. Wells Fargo Bank, N.A., 853 F. Supp. 2d 849, 855 (D.

Minn. 2012) ("[T]he [trial payment plan] is an offer to consider modification, expressly

conditioned on continued trial payments (for three months or longer) and other criteria.  As a

result, no contract formed" (citations omitted)).

Further, even if the Agreement was a contract, it is not enforceable as it fails to comply

with Minn. Stat. § 513.33, subd. 2.  This statute provides that certain credit agreements must be

in writing, express consideration, set forth the relevant terms and conditions, and be signed by

the lender and borrower.  See Minn. Stat. § 513.33, subd. 2.  Home mortgage loan modification

agreements fall into the category of credit agreements covered under the statute.  See Wittkowski

v. PNC Mortg., No. 11-1602, 2011 WL 5838517, at *3 (D. Minn. Nov. 18, 2011).  The

Agreement is unsigned and Plaintiffs make no allegations to the contrary.  As such, the

Agreement does not constitute an enforceable contract under which Plaintiffs may assert a

breach of good faith and fair dealing claim.  See Myrlie v. Countrywide Bank, 775 F. Supp. 2d

1100, 1109 (D. Minn. 2011) (stating that an action based on a loan modification agreement is

barred pursuant to Minn. Stat. § 513.33 unless the agreement is in writing, expresses

consideration, lays out terms and conditions, and is signed).

Plaintiffs attempt to circumvent this result by emphasizing that a statute of frauds

argument under Minn. Stat. § 513.33 is an affirmative defense not properly evaluated at the

motion to dismiss stage.  However, the Eighth Circuit has stated that "[i]f an affirmative defense

. . . is apparent on the face of the complaint . . . that [defense] can provide the basis for dismissal

under Rule 12(b)(6)." C.H. Robinson Worldwide, Inc. v. Lobrano, 695 F.3d 758, 764 (8th Cir. 2012) (quotation omitted). This is the situation here; the statute of frauds affirmative defense is apparent on the face of the Complaint. See Stumm v. BAC Home Loans Servicing, LP, 914 F. Supp. 2d 1009, 1017 (D. Minn. 2012) (finding that an affirmative defense under Minn. Stat. § 513.33 was apparent from the face of the complaint when the plaintiffs sought to enforce a promise that was required in writing under the statute). This claim is dismissed.

**D. Negligent Misrepresentation**

Plaintiffs next assert a claim for negligent misrepresentation based on the statements of Wells Fargo employee Jane Middents in 2014.

A person makes a negligent misrepresentation under Minnesota law when "(1) in the course of his or her business, profession, or employment, or in the transaction in which he or she has a pecuniary interest, (2) the person supplies false information for the guidance of others in their business transactions, (3) another justifiably relies on the information, and (4) the person making the representation has failed to exercise reasonable care in obtaining or communicating the information." Christensen v. PennyMac Loan Servs., LLC, 988 F. Supp. 2d 1036, 1043 (D. Minn. 2013) (citing Valspar Refinish, Inc. v. Gaylord's, Inc., 764 N.W.2d 359, 369 (Minn. 2009)).

"Under Minnesota law, any allegation of misrepresentation, whether labeled as a claim of fraudulent misrepresentation or negligent misrepresentation, is considered an allegation of fraud which must be pled with particularity." Trooien v. Mansour, 608 F.3d 1020, 1028 (8th Cir. 2010) (citation omitted). As such, Plaintiffs are required to satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b) and plead "such matters as the time, place and

contents of false representations, as well as the identity of the person making the representations

and what was obtained or given up thereby." Freitas v. Wells Fargo Home Mortgage, 703 F.3d

436, 439 (8th Cir. 2013).

Here, Plaintiffs allege that in April 2014, Jane Middents told them that they qualified for

a loss mitigation option and, under the terms of that plan, the interest rate would not increase for

the life of the loan.  Plaintiffs claim that this statement was false because the Agreement

contemplated potential interest rate changes and included terms that were impossible to satisfy as

two payment deadlines had already lapsed.  Id. ¶ 57.  Wells Fargo argues that these pleadings are

insufficient to state a claim for negligent misrepresentation for two reasons.  First, Wells Fargo

claims Plaintiffs have failed to plead with the requisite specificity that Middents' statements

were in fact false.  Second, Wells Fargo maintains that Plaintiffs have failed to allege detrimental

reliance on Middents' statements.

The Court finds Wells Fargo's second argument dispositive of this claim; Plaintiffs have

failed to plead their allegation of detrimental reliance with particularity.  In the Amended

Complaint, the following facts are pled regarding detrimental reliance:

> Plaintiffs relied on Ms. Middents' representations to their detriment.  After
> receiving the confusing Temporary Forbearance Agreement, Plaintiffs assumed
> that their previous communications seeking clarification from Wells Fargo about
> the loan modification would be answered and that the situation would be cleared
> up, given Ms. Middents' unequivocal statements that plaintiffs could indeed
> participate in a loss mitigation option and that the interest rate on the loan would
> not change.  While they waited for the requested clarification (which they
> assumed would be forthcoming), Wells Fargo removed them from the program
> and referred the loan for foreclosure proceedings.

Am. Compl. ¶ 58.  According to Wells Fargo, this is insufficient because the Amended

Complaint only avers that the Plaintiffs waited for clarification about the modification from

Wells Fargo based on Middents' statements.  Plaintiffs respond that granting all reasonable inferences to Plaintiffs, the pleadings make clear that "'waiting for clarification' was an alternative to immediately contacting Wells Fargo about the Temporary Forbearance Agreement, attempting to make a payment, or taking any other action to try to prevent the house from going into active foreclosure."  Mem. Opp'n Mot. Dismiss at 25–26.

Critically, Plaintiffs do not plead that but for Middents' statements, they would have acted differently in pursuing alternatives other than simply waiting for more information from Wells Fargo (i.e., attempting to make a payment or contacting Wells Fargo).  Moreover, even if the Complaint did include such allegations, the claim still fails because it contains no facts to plausibly show that the result would have been different.  See Carson v. Bank of America, N.A., No. 12-1440, 2012 WL 5519733, at *3 (D. Minn. Nov. 14, 2012) (dismissing a negligent misrepresentation claim for failing to plead detrimental reliance, stating "the homeowners could not have been harmed by their failure to explore alternatives to foreclosure because there is no allegation that one of those alternatives would have worked" (internal quotations and citations omitted) (emphasis in original)).  Plaintiffs generalized statements that Middents' negligent misrepresentations deprived them of participating in loss mitigation which resulted in an improper foreclosure are insufficient to meet the Rule 9(b) particularity standard.

## E.  RESPA

Plaintiffs further allege that Wells Fargo violated RESPA by not responding to Plaintiffs' inquiries, giving Plaintiffs inaccurate information, and proceeding with foreclosure without first giving Plaintiffs meaningful consideration of loss mitigation opportunities.  Am. Compl. ¶ 62. Specifically, Plaintiffs claim that Wells Fargo violated RESPA's implementing regulation, 12

C.F.R. §§ 1024.38 and 1024.41.

12 C.F.R. § 1024.38 requires loan services to "maintain policies and procedures that are reasonably designed to . . . assess[] and provide[e] timely and accurate information [and] properly evaluat[e] loss mitigation applications."  12 C.F.R. §§ 1024.38(a),(b).  Wells Fargo argues that § 1024.38 does not confer a private right of action.  The Court agrees.  In its final rule adopting this regulation, the Consumer Financial Protection Bureau stated:

> Ultimately, the Bureau agrees with the commenters that allowing a private right of action for the provisions that set forth general servicing policies, procedures, and requirements would create significant litigation risk . . . .  The Bureau believes that supervision and enforcement by the Bureau and other Federal regulators for compliance with and violations of § 1024.38 respectively, would provide robust consumer protection without subjecting servicers to the same litigation risk and concomitant compliance costs as civil liability for asserted violations of § 1024.38.

78 Fed. Reg. 10778–10779.  Courts interpreting this section have found that RESPA does not provide a private right of action under § 1024.38.  See Andrade v. Carrington Mortg. Servs., LLC, No. 15-713, 2015 WL 7108119, at *3 (W.D. Mich. Nov. 13, 2015) ("As an initial matter, Plaintiffs' claim fails to the extent that it is based on 12 C.F.R. § 1024.38 because Plaintiffs do not have a private right of action under that section); Sharp v. Deutsche Bank Nat'l Trust Co., No. 14-369, 2015 WL 4771291, at *6–7 (D. N.H. Aug. 11, 2015) (finding that based on the Consumer Financial Protection Bureau's interpretation of § 1024.38, there was no private right of action under the section); Deming-Anderson v. PNC Mortg., No. 15-11688, 2015 WL 4724805, at *4 (E.D. Mich. Aug. 10, 2015) ("This Court need not address Plaintiff's substantive claim because Plaintiff has no right of action under 12 C.F.R. § 1024.38").  To the extent Plaintiffs base their RESPA claim on a violation of 12 C.F.R. § 1024.38, the claim fails because no private right of action was created by this regulatory provision.

Plaintiffs' RESPA claim based on 12 C.F.R. § 1024.41 also fails.  Section 1024.41 mandates that "[a] servicer shall exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application."  However, Plaintiffs do not allege that Wells Fargo failed to act diligently to obtain documents and information.  Rather, Plaintiffs' allegations focus on Wells Fargo's delay in responding to inquiries from the Plaintiffs and the provision of inaccurate information.  See Am. Compl. ¶ 67.  Because Plaintiffs failed to plead facts to show a plausible claim based on Wells Fargo's failure to exercise reasonable diligence in obtaining information, Plaintiffs' RESPA claim based § 1024.41 fails and Count IV is dismissed.

**F.  Quiet Title**

Count V asserts a quiet title claim under Minn. Stat. § 559.01 against both Wells Fargo and Rivertown.  Section 559.01 allows "[a]ny person in possession of real property personally . . . may bring an action against another who claims an estate or interest therein, or a lien thereon, adverse to the person bringing the action, for the purpose of determining such adverse claim and the rights of the parties, respectively."  Minn. Sat. § 559.01.  Plaintiffs claim that they own the property in dispute and Wells Fargo and Rivertown have an adverse interest in the property.  Plaintiffs maintain that their ownership in the property takes precedent over Wells Fargo and Rivertown's interest because Wells Fargo failed to strictly comply with Minnesota's Foreclosure laws.  According to Plaintiffs, Wells Fargo failed to adhere to the requirements of Minn. Stat. § 580.04(a)(1) when it identified Plaintiff on the Notice of Foreclosure as "Shawnine Shawnine" instead of her legal name, the singular "Shawnine."

Under Minnesota law, to adequately state a claim for quiet title Plaintiffs are required to "state facts sufficient to allow the court to draw the reasonable inference that . . . [they] are in

16

possession and that a defendant claims a right or title to the property, but has no such right or title." Novak v. J.P. Morgan Chase Bank N.A., No. 12-589, 2012 WL 3638513, at *4 (D. Minn. Aug. 23, 2012). Plaintiffs have not done so. Minn. Stat. § 580.04(a)(1) simply requires that the notice of foreclosure sale must "specify or contain . . . the name of the mortgagor." Here, the Mortgage lists the borrowers' names as "Brent C. Anderson and Shawnine Shawnine" and the Notice of Foreclosure mirrors the names as written on the Mortgage.

Plaintiffs have provided no authority in support of their contention that Minn. Stat. § 580(a)(1) requires lenders to independently verify if the legal name of the mortgagor conflicts with the name as listed on the mortgage. Moreover, the Court will not impose such a requirement into the statute. See Reiter v. Kiffmeyer, 721 N.W.2d 908, 911 (Minn. 2006) (stating that the court will not read into statutory language words that the legislature omitted). The Notice of Foreclosure identifies the Plaintiffs by the names specified in the mortgage, no more is needed under the statute. Plaintiffs have failed to state a claim for quiet title.[4]

## G. Declaratory Judgment

Lastly, Plaintiffs seek declaratory judgment under 28 U.S.C. § 2201(a) against Wells Fargo and Rivertown consistent with Plaintiffs' prayer for relief. Plaintiffs seek recission of the foreclosure sale and reinstatement of their mortgage, damages, costs and attorneys' fees, and an order enjoining Rivertown from taking any action to evict the Plaintiffs. However, a declaratory

---

[4] The Amended Complaint also alleges that Wells Fargo violated Minnesota law as the power of attorney to foreclose failed to correctly identify the mortgagors. Minn. Stat. § 580.05 only requires that "the authority of the attorney at law shall appear by power of attorney executed and acknowledged by the mortgagee or assignee of the mortgage in the same manner as a conveyance, and recorded prior to the sale in the county where the foreclosure proceedings are had." Accordingly, under the plain language of the statute, there is no requirement that the power of attorney identify the mortgagors.

judgment is a remedy, not a cause of action.  Onvoy, Inc. v. ALLETE, Inc. 736 N.W.2d 611,

617–18 (Minn. 2007).  Because Plaintiffs' substantive claims fail, Plaintiffs' declaratory

judgment claim necessarily fails as well.  See Lara v. Federal Nat'l Mortg. Ass'n, No. 13-676,

2013 WL 3088728, at *3 (D. Minn. June 18, 2013) ("Having failed to state a substantive claim,

the Amended Complaint also fails to state a claim for a declaratory judgment.").

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1.     Defendant Wells Fargo's Motion to Dismiss [Docket No. 51], in which Defendant
       Rivertown joins, is GRANTED;

2.     Plaintiffs' Amended Complaint [Docket No. 49] is DISMISSED.[5]

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

                                            BY THE COURT:


                                            ____s/Ann D. Montgomery_____
                                            ANN D. MONTGOMERY
                                            U.S. DISTRICT JUDGE

Dated:  February 25, 2016.

---

[5] Although no claims are asserted in the Amended Complaint against Schiller & Adam,
P.A., it remains named as a Defendant in this action.  Given the Courts conclusion that no claims
remain and that Schiller & Adam, P.A. is not referenced in the Prayer for Relief, Schiller &
Adam, P.A. is also dismissed from this action.